UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NRG SOLUTIONS and BEVERLY HOLCOMB | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| NEUROGISTICS CORPORATION and PAM MACHEMEHL HELMLY | ) ) ) ) |
| Defendants. | ) |

Case No. 10 C 0667

Judge Joan B. Gottschall

## **MEMORANDUM OPINION AND ORDER**

### **I. Background**

This case involves a contract dispute between plaintiffs NRG Solutions ("NRG") and Beverly Holcomb, NRG's owner and operator, and defendants Neurogistics Corporation ("Neurogistics") and its CEO Pam Machemehl Helmly. The court has jurisdiction based on diversity of citizenship—Holcomb is an Illinois citizen, NRG is based in Illinois, Helmly is a citizen of Texas, and Neurogistics is based in Texas.

For the purpose of this motion, the court accepts the following facts as true. On May 4, 2009, Helmly and Holcomb signed an agreement which provided that Neurogistics would acquire the assets of NRG.[1] (Compl. ¶ 9 & Ex. A.) The parties also agreed that Holcomb would become an employee of Neurogistics, and that NRG's credit card debt would be guaranteed. (*Id.* ¶¶ 10-11.) Holcomb was to be paid a net monthly income of, at least, $4,000 and, after four months, certain commissions on sales, with a premium on sales to NRG clients. (*Id.* ¶ 10, Ex. A at 6.)

---

[1] According to the complaint, NRG "was generally engaged in the business of hormone testing, Transdermal hormone crèmes, and supplements." (Pls.' Compl. ¶ 7). Neurogistics "is generally engaged in the business of Neurotransmitter testing and supplements." (*Id.* at ¶ 8).

On July 10, 2009, Helmly repudiated the contract in a telephone call and by email. (*Id.* ¶ 12). As of the filing of this lawsuit, Helmly and Neurogistics have not complied with the terms of the contract. (*Id.* ¶ 13.) NRG and Holcomb filed their complaint on February 2, 2010 seeking $75,000 in monetary damages and specific performance of the contract.

Defendants filed a motion to dismiss, arguing (1) that the complaint fails to state a cause of action against Helmly, individually, because the contract was between only NRG and Neurogistics, and (2) that Holcomb was employed at-will by Neurogistics and thus the contract for employment could be terminated at any time without breaching the contract.

## II. Standard

Federal Rule of Civil Procedure 12(b)(6) enables a defendant to seek dismissal of a complaint that fails to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the court must "tak[e] all well-pleaded allegations of the complaint as true and view[ ] them in the light most favorable to the plaintiff." *Santiago v. Walls,* 599 F.3d 749, 756 (7th Cir. 2010) (*quoting Zimmerman v. Tribble,* 226 F.3d 568, 571 (7th Cir. 2000)). To survive a Rule 12(b)(6) motion to dismiss, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

## III. Analysis

### A. Helmly's Personal Liability

Defendants argue that Helmly signed the contract only as an officer of Neurogistics, not in her individual capacity, and thus undertook no personal obligation. They contend that the provisions of the contract, which is attached to the complaint, are unambiguous.

Under Illinois law, "[a]n unambiguous contract must be enforced as written." *M.S. Distributing Co. v. Web Records, Inc.*, No. 00 C 1436, 2001 WL 685923, *4 (N.D. Ill. June 13, 2001) (citing *Bank of America Nat'l Trust & Savings Ass'n v. Schulson*, 714 N.E.2d 20, 24 (Ill. App. Ct. 1999)).[2] Whether an ambiguity exists is a question of law which depends on whether the contract is fairly susceptible to more than one interpretation, looking at the contract as a whole. *Id*. The meaning of an unambiguous contract is a question of law, but the meaning of an ambiguous contract is a question for the trier of fact. *LaSalle Nat'l Bank v. Serv. Merch. Co.*, 827 F.2d 74, 78 (7th Cir. 1987).

Defendants point to several provisions which suggest that the parties intended only Neurogistics to be bound. For example, the contract is titled "Contract between Neurogistics Corporation and NRG Solutions (both S Corps)." (Compl. Ex. A at 6.) The contract also provides that, "Beverly Holcomb will become a full time employee of Neurogistics Corporation . . . ." (*Id*.)

However, other parts of the contract suggest that Helmly was an intended party. The signature page states: "This contract is agreed upon freely by the following signors." It then lists Helmly and Holcomb but not their titles. (*Id.* at 9.) The contract also provides with respect to NRG's credit card debt, "Pam Machemehl Helmly, CEO of Neurogistics will sign an agreement to guarantee payment to both Beverly Holcomb and the co-signer of the credit cards." (*Id.* at 7.) Given these provisions, one could reasonably interpret the contract to intend that Helmly become personally bound.

---

[2] When jurisdiction is based on diversity of citizenship, the court applies state law to resolve substantive issues. *LaSalle Nat'l Bank v. Serv. Merch. Co.*, 827 F.2d 74, 78 (7th Cir. 1987). In their briefs, the parties mostly cite Illinois cases. The defendants note that a question might be raised whether Illinois or Texas law applies to this contract. However, defendants conclude that no important differences between the two states' laws exist. Where the parties in a contract dispute are unconcerned about potential choice of law issues, the court should not reach out to decide them. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 546-47 (7th Cir. 2009). Accordingly, the court will follow the parties' lead and look to Illinois law in interpreting the contract.

3

**B. At-Will Employment**

Defendants also claim that Neurogistics did not breach the contract by failing to employ Holcomb because Holcomb was an at-will employee of Neurogistics. In Illinois, employment contracts are presumed to be at-will and therefore terminable by either party without cause. *See McInerney v. Charter Golf, Inc.*, 680 N.E.2d 1347, 1349 (Ill. 1997) The presumption for at-will employment is "a rule of construction, mandating only a presumption that a hiring without a fixed term is at will, a presumption which can be overcome by demonstrating that the parties contracted otherwise." *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987). There are two separate ways that a contract can be prevented from being an at will contract: "the employer could promise not to terminate the employee without good cause or otherwise limit its ability to terminate the employee," or the "employer could agree to a definite duration for the contract." *Watts v. Advance Transformer Co.*, No. 02 C 4603, 2002 WL 31356449, at *3 (N.D. Ill. Oct. 18, 2002) (citing *Hudson v. Allstate Ins. Co.,* 93 F.3d 296, 299 (7th Cir. 1996); *Geva v. Leo Burnett Co., Inc.,* 931 F.2d 1220, 1222 (7th Cir. 1991)).

Plaintiffs point to the existence of certain terms of the contract, including the "Additional Compensation" section, which specified an additional commission Holcomb was to become eligible to receive on August 1, 2009, and the "Long-term Compensation Goals" section, which further revised Holcomb's commissions and was to begin on January 1, 2010, arguing that they contemplate an agreement for a fixed term. Defendants counter that these contractual terms do not establish a clear and definite duration of future employment; rather, they merely contemplate that the employment arrangement *may* last longer than eight months. The court need not resolve the meaning of these provisions because it sees another reason to suspect that the parties agreed to something other than at-will employment.

In this case, the employment contract was part of a larger agreement under which Holcomb transferred the assets of her company NRG, including its database of clients, to Neurogistics. In reviewing the contract, it appears that the only consideration for this transfer consisted of the employment agreement and the guarantee of NRG's credit card debt. If the employment agreement was intended to be at-will, then Neurogistics could have taken NRG's assets and then cut Holcomb loose without having incurred much expense. Thus, the fact that the employment contract contained additional consideration—the assets of NRG—suggests the parties may have intended Holcomb to have some greater degree of job security. *See Martin v. Fed. Life Ins. Co.*, 440 N.E.2d 998, 1003 (Ill. App. Ct. 1982) (allowing complaint to survive motion to dismiss where existence of "additional consideration"—i.e. employee's rejection of another company's employment offer—suggested parties may have anticipated permanent employment).

## IV. Conclusion

Accordingly, defendants' motion to dismiss is denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 24, 2011